NO.    17-2002/17-2003

In The

# United States Court of Appeals

For The Fourth Circuit

BRIAN C. DAVISON

Plaintiff - Appellant,

v.

PHYLLIS RANDALL, in her individual and official capacity as Chair of the Board of Supervisors for Loudoun County, Virginia, AND LOUDOUN COUNTY BOARD OF SUPERVISORS

Defendants - Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE  EASTERN DISTRICT OF VIRGINIA                AT  ALEXANDRIA

PLAINTIFF-APPELLANT BRIAN C. DAVISON'S

INFORMAL OPENING BRIEF

Brian Davison
43724 Stone Fence Ter
Leesburg, VA 20176
703.348.7067
bcdavison@hotmail.com

Scott E. Gant and Nathan E. Gant
1401 New York Avenue, NW
Washington, DC 20005
202.237.2727
sgant@bsfllp.com

Counsel for Plaintiff-Appellant (Pro Se)

Defendants-Appellees

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _17-2002 (L)_   Caption: _Brian Davison v. Phyllis Randall_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Brian C. Davison_
(name of party/amicus)

who is _appellant (2003)_ _appellee (2002)_ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☒ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☒ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☒ NO
      If yes, identify all such owners:

09/29/2016 SCC                                - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☒ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☒ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☒ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _B C W_____    Date: _18 Sep 2017_____

Counsel for: _____

## CERTIFICATE OF SERVICE
***************************

I certify that on _19 Sep 2017___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_B C W_____                     _19 Sep 2017_____
(signature)                                 (date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.      Whether the declaratory judgment on the First Amendment speech claims in Counts V and VII should have been issued against Defendant Randall in her official capacity, and thus the Loudoun BOS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.    Counts V and VI were only added after the Loudoun BOS disputed whether an individual Loudoun Supervisor Facebook page had to comply with First Amendment protections . . . . . 9

        C.    The Loudoun BOS has taken no action to correct its policy that individual Supervisor Facebook pages are outside the scope of First Amendment protections . . . . . . . . . . . . . . . . . . . . . . . 12

        D.    The Loudoun BOS is the appropriate public body to sue in an official capacity for Counts V and VI . . . . . . . . . . . . . . . . . . 14

    II.     Whether a declaratory judgment on the procedural Due Process claims in Counts VI and VIII should have been issued against Defendant Randall in her personal and official capacities, and thus against the Loudoun BOS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

B.   It was the policy of the Loudoun BOS that Supervisors could administer their Supervisor Facebook pages in any manner they wished including exercising viewpoint discrimination ...................................................................... 18

C.   Prior notice and hearings are required before liberty interests may be infringed ................................................................ 18

D.   The Loudoun BOS can provide adequate pre-deprivation due process ................................................................................. 22

E.   Viewpoint discrimination by Loudoun Supervisors on their individual Facebook pages was foreseeable ...................... 24

F.   Banning a user on social media represents an "irreparable injury" and a significant burden on speech ......................... 25

G.   There is no evidence that Loudoun Supervisors would not comply with due process protections on their individual Facebook pages .................................................................. 28

III.   Whether Davison's motion to amend to add Count IX regarding First Amendment claims on Loudoun County Facebook pages should have been denied. ........................................................ 30

A.   Standard of Review ............................................................ 30

B.   Davison stated a plausible First Amendment claim in his motions to amend .................................................................. 30

C.   Davison's multiple motions to amend were timely and did not prejudice Defendants ................................................... 36

CONCLUSION ................................................................................. 37

REQUEST FOR ORAL ARGUMENT ....................................................... 38

CERTIFICATE OF COMPLIANCE ............................................................ 39

CERTIFICATE OF FILING AND SERVICE .................................................. 40

# TABLE OF AUTHORITIES

**CASES**                                                    **Page**

*Anderson v Sara Lee Corp.*,
    508 F.3d 181, 188 (4th Cir 2007)...................................................... 30

*Ayers v Cont'l Cas. Co.*,
    240 F.R.D. 216, 220-21 (2007) ........................................................ 16

*Balas v Huntington Ingalls Indus.*,
    711 F.3d 401, 409 (4th Cir 2013)...................................................... 30

*Bantum Books, Inc. v Sullivan*,
    372 U.S. 58, 70 (1963) ...................................................................... 19

*Centennial Life Ins Co. v Poston*,
    88 F.3d 255 (4th Cir 1996).................................................................. 11

*Christie v Iopa*,
    176 F.3d 1231, 1239 (9th Cir 1999)............................................. 12, 13

*City of Canton v Harris*,
    489 U.S. 378, 390 (1998) .................................................................. 13

*Cleveland Bd. Of Education v Loudermill*,
    470 U.S. 532, 542 (1985) ............................................................ 19, 20

*Cyr v ARSU*,
    60 F. Supp. 3d 536, 548-50 (2014) .................................................. 26

*Daily Herald Co. v Munro*,
    838 F.2d 380, 383 (9th Cir. 1988)...................................................8, 18

*Davison v Plowman*,
    2017 U.S. Dist. LEXIS 4348 at 8-10 ................................................ 31

*Davison v Plowman*,
    2017 U.S. Dist. LEXIS 47157 at 18-21 .................................. 2, 17, 21

*Edwards v. City of Goldsboro,*
    178 F.3d 231, 242 (4th Cir. 1999).................................................... 30

*Elkay Mining Co. v Smith,*
    2017 U.S. App. LEXIS 21917 at 12...............................................8, 17

*Elrod v Burns,*
    427 U.S. 347, 373 (1976) ................................................................ 19

*Freedman v Maryland,*
    380 U.S. 57, 58 (1965) .................................................................... 19

*Gompers v Buck Stove & Range, Co.,*
    221 U.S. 418, 439 (1911) ................................................................ 21

*Grandstaff v Borger,*
    767 F.2d 161, 171 (5th Cir 1985).................................................... 13

*HCMF Corp. v. Allen,*
    238 F.3d 273, 276-77 (4th Cir. 2001) ............................................. 30

*Henry v County of Shasta,*
    132 F.3d 512, 518 (9th Cir 1997).................................................... 12

*Hudson v Palmer,*
    468 U.S. 517 (1984) ................................................................... 19-20

*Johnson v. Oroweat Foods Co.,*
    785 F.2d 503, 509 (4th Cir. 1986)................................................... 30

*Link v Wabash R.R. Co.,*
    370 U.S. 626, 634 (1962) ................................................................ 12

*Lovell v Poway United School Dist.,*
    90 F.3d 367, 370 (9th Cir. 1996)....................................................9, 18

*Mathews v Eldridge,*
    424 U.S. 319, 335 (1976) ................................................................ 19

iv

*McMahon v City of Panama City Beach,*
        180 F. Supp. 3d 1076, 1113 (2016)............................................. 33,35

*McRorie v Shimoda,*
        1986 U.S. App. LEXIS 27475 at 11.................................................. 13

*Melendres v Arpaio,*
        784 F.3d 1254, 1260 (9th Cir 2015).................................................. 15

*Mitchell v W.T. Grant Co.,*
        416 U.S. 600, 611 (1974) ................................................................ 19

*Near v Minnesota,*
        283 U.S. U.S. 697, 716-17 (1931).................................................... 21

*Packingham v North Carolina,*
        137 S.Ct. 1730, 1735-36 (2017)....................................................... 26

*Parratt v Taylor,*
        451 U.S. 527 (1981) ................................................................... 19-20

*Planned Parenthood of the Col. Will. Inc. v Am. Coalition of Life Activists,*
        290 F.3d 1058, 1069 (9th Cir. 2002)...........................................9, 17

*Pleasant Grove City v Summum,*
        555 U.S. 460, 467-69 (2008)........................................................... 27

*Schenck v United States,*
        249 U.S. 47, 52 (1919) .................................................................... 21

*Southeastern Productions, Ltd. v Conrad,*
        420 U.S. 546, 555 (1975) ................................................................ 20

*Taylor v Weinberger,*
        528 F.2d 1153, 56 (1975) ................................................................ 16

*Tri Cnty Paving, Inc. v Ashe Cty,*
        281 F.3d 430, 441 (4th Cir 2002)..................................................... 20

*United States v Daughtrey,*
   874 F.2d 213, 217-18 (4th Cir 1989) ...............................................8, 17

*United States v County of Maricopa,*
   151 F.Supp 3d 998, 1015-16 (2015) .................................................. 15

*US Airline Pilots Ass'n v AWAPPA,*
   615 F.3d 312, 317, 320 (4th Cir 2010)............................................. 30

*Vance v Universal Amusement,*
   445 U.S. 308, 311-16 (1980)............................................................ 20

*Will v Michigan Dep't of State Police,*
   491 U.S. 58, 71 (1989) .................................................................... 12

*Zinernon v Burch,*
   494 U.S. 113, 127 (1990) .................................................11, 18-19, 21

## CONSTITUTIONAL PROVISIONS

U.S. Constitutional Amendment I ..........................................................*passim*

U.S. Constitutional Amendment XIV .....................................................*passim*

## STATUTES

28 U.S.C. § 1291............................................................................................1

28 U.S.C. § 1331............................................................................................1

28 U.S.C. § 2201............................................................................................1

42 U.S.C. § 1983................................................................................... 1,3,12

## TRIAL DOCUMENTS

Transcript [Dk. 128] ("Tr") ..................................................................*passim*

**TRIAL COURT OPINIONS/DECISIONS**

Memorandum Opinion, September 14, 2016 (Dkt 11) .........................*passim*

Memorandum Opinion, January 4, 2017 (Dkt 57) ...............................*passim*

Memorandum Opinion, May 10, 2017 (Dkt 116) ................................*passim*

Memorandum of Decision, July 25, 2017 (Dkt 132) ............................*passim*

## JURISDICTIONAL STATEMENT

This is an appeal from a final Order and Judgment of the United States District Court for the Eastern District of Virginia entered on July 25 and July 26, 2017, respectively, granting judgment in part to Plaintiff and in part to Defendants and disposing of all claims asserted by Brian Davison ("Davison"). The Appellant, Brian C. Davison, sued Appellees, Loudoun County Board of Supervisors (BOS), Phyllis Randall (Randall) in her individual and official capacity, and individual defendants in their official capacities, alleging that defendants violated Appellant's First and Fourteenth Amendments' rights to freedom of speech and due process. Davison also included a state law Freedom of Information Act (FOIA) claim against defendants. Davison filed suit on July 20, 2016 invoking the jurisdiction of the District Court pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. § 1983 and 28 U.S.C. § 2201. Davison timely filed their Notice of Appeal on August 24, 2017, and invokes this Court's jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the declaratory judgment on the First Amendment speech claims in Counts V and VII should have been issued against Defendant Randall in her official capacity, and thus the Loudoun BOS?

2. Whether a declaratory judgment on the procedural Due Process claims in Counts VI and VIII should have been issued against Defendant Randall in her personal and official capacities, and thus against the Loudoun BOS?

3. Whether Davison's motion to amend to add Count IX regarding First Amendment claims on the Loudoun BOS Facebook page should have been denied?

## STATEMENT OF THE CASE

This is the appeal of the Trial Court's Final Order of Davison's civil rights action.  In July 2016, the Loudoun County BOS conducted a zoning committee hearing in which one of its Supervisors remotely interacted with the physically present Supervisors via text messages.  Allegations of violations of Virginia's FOIA were levied by a Virginia state delegate present at the meeting.  The Loudoun County attorney, Defendant Leo Rogers, issued a public opinion that no violations of FOIA occurred.  The opinion was posted on the "Loudoun County Government" (LCG) Facebook page.  Plaintiff Davison made critical comments under the LCG Facebook post.  Within minutes of creating the comments, three (3) out of four (4) of Davison's comments on the LCG page disappeared.

Davison had previous experience with censorship on the Facebook pages of Loudoun County officials and public bodies.  Davison's comments were deleted and he was banned from the Loudoun County Commonwealth's Attorney Facebook page in December 2015. *Davison v Plowman*, 2017 U.S. Dist. LEXIS 47157 Two months later, during a joint Loudoun County school board/BOS town hall event in February 2016, Loudoun County BOS Chair Phyllis Randall banned him from her

2

"Chair Phyllis J. Randall" Facebook page. Multiple Loudoun County school board members maintained bans against Davison on their school board Facebook pages during the duration of this suit. *Davison v Rose*, (1:16-CV-540) Given this prior experience, Davison immediately filed a § 1983 action in July 2016 against the Loudoun BOS for free speech infringement and included a state law FOIA claim against the Loudoun Supervisors involved in the land use hearing.

Defendants moved to dismiss all claims arguing that no Loudoun County employee or official took action to delete Davison's comments on the LCG page. The Defendants also asserted that Randall's Facebook page was not a government forum and thus her ban against Davison in February 2016 was not subject to First Amendment protections. On September 14, 2017, the trial court dismissed the state law FOIA claim under sovereign immunity, dismissed the individual Defendants as parties to the suit, but denied Defendants' motion to dismiss Counts I and II. Dkt. 11.

Given Defendants' assertions that Randall's Facebook page was immune from First Amendment protections, Davison moved to amend his complaint to seek a declaratory judgment that Defendant Randall violated his First Amendment right of free speech and his Fourteenth Amendment right of procedural due process when she banned him from her Facebook page, Counts V and VI. Davison also alleged a

First Amendment claim, Count VII, against the BOS for allowing Facebook users to block his ability to create comments under certain Loudoun County Facebook pages. The magistrate judge granted Davison's motion to amend on Counts V and VI but denied without prejudice leave to add Count VII.

Davison notified the Loudoun BOS that third-party Facebook users were blocking him from creating comments on Loudoun County Facebook pages and refiled his motion to amend including Count VII. The magistrate judge again denied Davison leave to add Count VII on the basis it was futile. Davison filed an Amended Complaint including the approved Counts V and VI.

After filing the amended complaint, Davison sought summary judgment against Randall in her personal capacity on Counts V and VI while Defendants filed an opposing motion to dismiss those same counts. On January 4, 2017, the trial court denied both motions. Dkt. 57.

Discovery ensued. Based on Davison's subpoena of Facebook, the parties learned that Facebook's software had deleted Davison's comments on the LCG page but that Facebook had modified its software to prevent such deletions in the future. Dkt. 97-32. Defendants also refused to provide answers to interrogatories Davison requested of individual Loudoun Supervisors. Davison then filed a motion to compel answers to the interrogatories. Davison also filed a third motion to amend

his complaint to add speech and due process claims under the Virginia Constitution (Counts VII and VIII) and again attempted to add the third-party speech claim restyled as Count IX. Dkt. 67, 68, 70, 70-1 through 70-9. The magistrate judge denied Davison's motion to compel, granted Davison leave to add Counts VII and VIII but denied with prejudice leave to add Count IX.[1] Dkt. 87.

Defendants moved for summary judgment on all remaining claims. Dkt. 96, 97, 97-1 through 97-36. In response to the summary judgment motion, Davison acknowledged that Counts I and II were moot given the new information provided by Facebook.  Dkt. 107, p11.  Davison filed a motion for reconsideration to restore the Virginia FOIA claim, Count IV.  Davison also filed objections to the magistrate judge's ruling denying his motion to compel and leave to add Count IV.  Dkt. 92. On April 27, 2017, the trial court heard arguments on the motions for summary judgment, reconsideration and objections to the magistrate judge's ruling.  On May 10, 2017, the trial court denied Defendants motion for summary judgment, declined to exercise supplemental jurisdiction on Count IV and overruled Davison's objections to the magistrate's order. Dkt. 116

---

[1] Technically, Davison proposed his free speech claims under the Virginia Constitution as Counts VIII and IX during his March 2017 motion to file a second amended complaint.  The third-party infringement claim was styled as VII  on that same motion.  However, since only Virginia free speech claims were approved, they were officially added as Counts VII and VIII in the Second Amended Complaint.  To prevent confusion, Davison now refers to the third-party claim as a potential Count IX which could be added only after leave is granted by the trial court.

After failing to obtain a motion to compel before the magistrate judge, Davison filed a motion for leave to subpoena the Supervisors for testimony at trial. The magistrate judge deferred ruling on the subpoenas until the trial court issued its summary judgment opinion. Given that the trial court stated the remaining issues were "narrow" and related only to Randall's Facebook page, the magistrate judge denied Davison's motion for leave to issue subpoenas. Dkt. 118. The parties conducted a bench trial on May 16, 2017.

In its ruling on July 25, 2017, the trial court granted judgment against Defendant Randall in her individual capacity on the free speech claims, Counts V and VII. Dkt. 132. The trial court granted judgment on these same claims in an official capacity to Defendants. The trial court also granted judgment to the Defendants on the procedural due process claims, Counts VI and VIII, in both an individual and official capacity.

Both parties filed a notice of appeal on August 24, 2017.

## SUMMARY OF ARGUMENT

The trial court dismissed Counts V and VII for First Amendment speech violations against Defendant Randall in her official capacity. A suit against a state actor in their official capacity is a suit against the public body itself. Davison only added Counts V-VII related to Randall's banning of Davison on her "Chair Phyllis

J. Randall" Facebook page after the Loudoun BOS stated via a pleading in the present case that such Facebook pages are not subject to First Amendment protections. Thus, it is the policy of the Loudoun BOS to grant unlimited latitude to its Supervisors to discriminate against speech on such Supervisor pages even though its Supervisors can and do use part of their Supervisor office funding to support these pages. Declaratory relief is appropriately extended to cover the public body who controls the office budgets of each Loudoun Supervisor and can establish policy regarding the administration of such Facebook pages.

The trial court dismissed Counts VI and VIII for Fourteenth Amendment procedural due process violations in both individual and official capacities based on case law that suggests prior notice and an opportunity to be heard are not required when a constitutional violation occurs via an unauthorized act and that such acts cannot be foreseen. Defendants assert no procedural due process is required when Supervisors ban citizens from commenting on their individual Facebook pages since they allege such pages are not governmental forums. Based on Defendants' assertions and because Davison only seeks declaratory relief, a ban by a Loudoun Supervisor against a citizen on their Facebook page is not "unauthorized", is capable of repetition, and can be foreseen. Thus, a declaratory judgment is appropriate to guarantee Davison's constitutional right to procedural due process prior to

Defendants banning him from a Supervisor's Facebook page.

The trial court cited futility and the late stage of the proceedings in denying Davison's motion to amend his complaint to add Count IX against the Loudoun BOS. Davison plausibly alleged that Defendants may not acquiesce to third-party Facebook users denying Davison the right to comment on a Loudoun County Facebook page. Davison filed multiple motions to add Count IX throughout the proceedings and the facts surrounding the claim are not in dispute. Thus, the trial court erred as a matter of law on the futility of the claim and abused its discretion in ruling an amendment would prejudice the Defendants.

## ARGUMENT

### I.     Whether the declaratory judgment on the First Amendment speech claims in Counts V and VII should have been issued against Defendant Randall in her official capacity, and thus the Loudoun BOS.

#### A. Standard of Review

An appeal of a legal conclusion is reviewed *de novo*. *Elkay Mining Co. v Smith*, 2017 U.S. App. LEXIS 21917 at 12. To the extent the ruling is based on a mixed question of fact and law, the appeal is reviewed on a sliding scale depending on what factors controlled the decision, facts or legal conclusions. *United States v Daughtrey*, 874 F.2d 213, 217-18 (4th Cir 1989) In cases where the trial court has upheld a restriction of speech, the appellate court's independent examination

includes a *de novo* review of the facts. *Planned Parenthood of the Columbia Williamette Inc. v Am. Coalition of Life Activists*, 290 F.3d 1058, 1069 (9th Cir. 2002) (citing *Lovell v Poway United School Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) and *Daily Herald Co. v Munro*, 838 F.2d 380, 383 (9th Cir. 1988))

## B. Counts V and VI were only added after the Loudoun BOS disputed whether an individual Loudoun Supervisor Facebook page had to comply with First Amendment protections

The claim against Phyllis Randall for infringing on Davison's free speech rights by banning him from her "Chair Phyllis J. Randall" Facebook page was not included in the original complaint. The trial court clearly understood this fact based on its Memorandum Opinion on Defendants' first motion to dismiss noting Randall's deletion of comments on her own Facebook page was "neither the subject of this suit, nor particularly relevant to the instant Motion". Dkt. 11, p18, n5. However, in Defendant Loudoun BOS' first motion to dismiss pleading, the BOS stated that "Davison possesses no constitutional right to force the government, and certainly not an individually elected official like Randall, to listen … by prohibiting the removal of posted comments." Dkt. 4, p16. Defendant Loudoun BOS went on to plead that Randall's Facebook page was not a public forum, limited or otherwise. Defendant Loudoun BOS asserted Randall's Facebook page was not even a non-public forum. Dkt. 4, p15-16. BOS actions and legal pleadings were tantamount to

9

suggesting its officials could establish social media pages describing them in their official capacities, open those pages to general public comment, and then discriminate based on viewpoint. These assertions by the Loudoun BOS in its pleadings led Davison to add additional counts to the complaint.

In Davison's first motion to amend his complaint, he noted that he had not included in his original complaint claims against Randall banning him on her "Chair Phyllis J. Randall" Facebook page for fear they would be considered moot. Dkt. 14, p3. However, once Defendant Loudoun BOS asserted that citizens have no constitutional rights on such Facebook pages controlled by individual officials, Davison moved to add Counts V and VI against Randall in both her individual and official capacities. Failure by Davison to raise these counts in the current action may have precluded future claims by Davison on the doctrine of *res judicata*. Davison also noted that other Loudoun public bodies, including the Loudoun school board, had taken similar positions with respect to Facebook pages administered by their elected officials. Dkt. 14, p4 citing *Davison v Rose* (1:16-CV-540)

The trial court ultimately concluded that Defendant Loudoun County BOS' policies were unrelated to the ban Randall effected against Davison. Memo Decision, Dkt. 132, p23. However, given the BOS prior pleadings, the trial court asked the wrong question. The issue is not whether the BOS had a policy or custom

*encouraging* its Supervisors to ban citizens on their Supervisor Facebook pages. The question is whether it was a BOS policy to give its Supervisors unlimited discretion on how to operate those Facebook pages. Or rather, the BOS pleaded that its county social media policy, which barred viewpoint discrimination on social media pages administered by county employees, did not apply to the Supervisors Facebook pages. Dkt. 97, p7, ¶14. When a public body's policy provides wide discretion, it becomes liable for reasonably foreseen constitutional violations especially when appropriate safeguards have not been enacted. *Zinernon v Burch*, 494 U.S. 113, 127 (1990)

Davison only seeks a declaratory judgment in this case. This Court has determined that declaratory judgments are appropriate to clarify the legal relations at issue. Dkt 142, p42 citing *Centennial Life Ins Co. v Poston*, 88 F.3d 255 (4th Cir 1996) Thus, the relevant question here is what responsibility does a county board have to ensure compliance with constitutional protections on governmental forums among its members and employees. Under the trial court's ruling, if Davison had only plead an official capacity claim in Count V, Davison would not be entitled to even a declaratory judgment stating Randall's actions were unconstitutional. The trial court effectively ruled that even though it concluded Randall's Facebook page was a governmental forum, no public body had any responsibility to ensure compliance with constitutional protections on such a governmental forum under 42

11

U.S. C. § 1983. The facts demonstrate otherwise.

### C. The Loudoun BOS has taken no action to correct its policy that individual Supervisor Facebook pages are outside the scope of First Amendment protections

A party is deemed to have notice of all facts arguments alleged in the pleadings when it is a party to a lawsuit. *Christie v Iopa*, 176 F.3d 1231, 1239 (9th Cir 1999) (citing *Link v Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) and *Henry v County of Shasta*, 132 F.3d 512, 518 (9th Cir 1997)) Here, Loudoun BOS was a party to this suit both as a named party in Counts I and II and as the true official capacity party in Counts V and VI. *Will v Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) Loudoun BOS is thus aware that (1) Randall banned Davison on her "Chair Phyllis J. Randall" Facebook page; (2) other Loudoun constitutional officers banned Davison from their office's Facebook pages; (Tr. p31); (3) Loudoun County had banned other citizens on its county Facebook pages; Dkt 107-9, p2,¶2 and (4) multiple Loudoun school board members have banned Davison from their individual school board Facebook pages. *Davison v Rose* (1:16-CV-540) Contrary to the trial court's conclusion, Randall's use of her social media page in a manner that would make it governmental in nature is easily foreseen as nearly every member of the Loudoun BOS has an equivalent Facebook page. Dkt. 132, p34-35; Tr. p132; Dkt. 70-4, 70-8

The question for a declaratory judgment is not what actions the Loudoun BOS took prior to Randall's unconstitutional ban against Davison but rather what actions should the BOS have taken to avoid liability and what responsibility does the BOS have going forward. Defendant Randall noted in her interrogatory responses that she had no conversations related to the social media policies of the Loudoun BOS since this claim was filed and was unaware at trial the county's social media policy had even changed. Dkt. 107-9, p2, ¶3; Tr. p80 Besides being an incredulous answer[2], Randall's response and the BOS court pleadings demonstrate that the BOS continues to give unlimited discretion to their Supervisors on how to administer their individual Facebook pages. Courts have concluded that public bodies can be inferred to have ratified unconstitutional actions when they take no action after becoming aware of the illegal acts. *McRorie v Shimoda*, 1986 U.S. App. LEXIS 27475 at 11 (citing *Grandstaff v Borger*, 767 F.2d 161, 171 (5th Cir 1985)) The same is true here.[3]

This Court need not assign liability for Randall's past actions. This Court need only rule on Davison's request for a declaratory judgment pertaining to Loudoun BOS' liability for future infringements. Since it can reasonably be foreseen

---

[2] Randall plead that the Loudoun Social Media policy changed in November 2016 in her motion for summary judgment. Dkt 97, p4, #5 Yet she testified in court she was not aware that the policy had changed. This is but one of Randall's demonstrably false statements under oath.

[3] Public bodies may be liable on official capacity claims in one of three ways: final policymaking authority, ratification or deliberate indifference. *Christie v Iopa*, 176 F.3d 1231, 1240-41 (9th Cir 1991) citing *City of Canton v Harris*, 489 U.S. 378, 390 (1998) At best, the Loudoun BOS has shown deliberate indifference to the foreseeable act that a Loudoun Supervisor may ban citizens from their Facebook pages based on viewpoint discrimination.

13

that various Loudoun Supervisors will enact future free speech infringements on their Facebook pages, similar to Randall in the present case, if the Supervisors are led to believe such pages are not governmental forums, the Loudoun BOS cannot act with indifference.  The Loudoun BOS must correct its guidance to its Supervisors that their individual Facebook pages, when operated as a governmental forum, must comply with First and Fourteenth Amendment protections.  Otherwise, the Loudoun BOS should be put on notice via a declaratory judgment that it can be held liable for its continued indifference to such actions.

### D. The Loudoun BOS is the appropriate public body to sue in an official capacity for Counts V and VI

Virginia statute 15.2-1404 establishes the Loudoun County BOS as the entity that may sue or be sued.  The trial court concluded that the Loudoun BOS was not Defendant Randall's "superior in any relevant sense" and had no authority to approve or disapprove of actions on Randall's Facebook page.  Dkt. 132, p24.  The trial court failed to properly construe the relationship between the BOS and its members.  Virginia statute 15.2-403 grants county boards the authority to inquire into the general official conduct of any office or officer, whether elected or appointive.  Such officers would not only include the elected constitutional officers who are notionally independent of the county board but the elected officials of the board itself.  The Loudoun BOS has previously conducted such investigations into

the use of county employees by one of its Supervisors for personal gain. The Loudoun BOS voted to restrict the targeted Supervisor's office funding[4] and subsequently passed an ordinance[5] making it a misdemeanor for part-time employees to misuse public assets for personal purposes.

Likewise, the Ninth Circuit has ruled that an Arizona County can be substituted for a county sheriff who was incapable of being sued under Arizona law. *Melendres v Arpaio*, 784 F.3d 1254, 1260 (9th Cir 2015) The Arizona district court listed numerous ways the county could "contribute" to the relief requested of the sheriff. *United States v County of Maricopa*, 151 F.Supp 3d 998, 1015-16 (2015) The county could, for example, restrict the funding it provides to the sheriff's office or review the use of such funding in detail.

The Loudoun BOS could similarly censure and/or restrict funding from its members. The Loudoun BOS has never claimed it lacks the authority to establish a social media policy for its members nor to enforce a policy using the power of its purse. Funding provided by the county, including Supervisor staff and resources, may only be used for purposes and duties related to the office of the elected official or some other legitimate governmental interest. Loudoun County Ordinance 253.04

---

[4] https://goo.gl/vwfM8p
[5] Chapter 253 of Loudoun County's ordinances makes it a misdemeanor for any Supervisor, considered a part-time elected official, to use $1000 of county assets or labor for personal use https://goo.gl/2Hebjs

Defendant Randall acknowledged she used such funding, via her staff employees, to administer her newsletters to constituents and her "Chair Phyllis J. Randall" Facebook page in part. Tr. 109, 114-22, 126-29; 155-56; 218; 221-23 The Loudoun BOS has never denied that other Supervisors used county funds for administration of newsletters or individual Facebook pages. Yet the trial court shut down all inquiry into those factual determinations with its instructions in its Memo Opinion on Defendants' motion for summary judgment. Dkt. 116, p24. If This Court determines the nature of the BOS power to influence the behavior of its Supervisors via office funding or the use by other Supervisors of county funding for newsletters and Facebook pages needs further inquiry, Davison requests This Court reverse the trial court's denial of Davison's motion to compel responses to Davison's interrogatories and the testimony of other Loudoun Supervisors. Dkt. 116, p24, 27. Such a ruling represents an abuse of discretion when facts surrounding the use of Loudoun County funds are at issue in a claim. *Taylor v Weinberger*, 528 F.2d 1153, 56 (1975); *Ayers v Cont'l Cas. Co.*, 240 F.R.D. 216, 220-21 (2007)

Finally, the fact that the trial court issued a declaratory judgment against Randall in her individual capacity is not dispositive of the public capacity issue. Official capacity and individual capacity claims require different elements for success. As seen in the *Davison v Plowman* case, a court may refrain from ruling on

16

liability altogether in an individual capacity claim by invoking qualified immunity based on "unsettled" law even when multiple cases in other circuits have been similarly decided. 2017 U.S. Dist. LEXIS 47157 at 18-21. The need to overcome qualified immunity often leads to a heightened standard to prevail in personal capacity suits.  When litigants are deciding whether to bring suit to protect their rights, such calculus invariably weighs on whether and how to proceed.  The liability of public bodies who knowingly give members or officials the discretion to discriminate against citizens on limited public forums not only needs resolution but was at the heart of this case.

## II.     Whether a declaratory judgment on the procedural Due Process claims in Counts VI and VIII should have been issued against Defendant Randall in her personal and official capacities, and thus against the Loudoun BOS.

### A. Standard of Review

An appeal of a legal conclusion is reviewed *de novo*.  *Elkay Mining Co. v Smith*, 2017 U.S. App. LEXIS 21917 at 12.   To the extent the ruling is based on a mixed question of fact and law, the appeal is reviewed on a sliding scale depending on what factors controlled the decision, facts or legal conclusions.  *United States v Daughtrey*, 874 F.2d 213, 217-18 (4th Cir 1989)  In cases where the trial court has upheld a restriction of speech, the appellate court's independent examination includes a *de novo* review of the facts. *Planned Parenthood of the Columbia*

17

*Williamette Inc. v Am. Coalition of Life Activists*, 290 F.3d 1058, 1069 (9th Cir. 2002) (citing *Lovell v Poway United School Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) and *Daily Herald Co. v Munro*, 838 F.2d 380, 383 (9th Cir. 1988))

## B. It was the policy of the Loudoun BOS that Supervisors could administer their Supervisor Facebook pages in any manner they wished including exercising viewpoint discrimination

It is not disputed that Randall banned Davison from her Facebook page with no prior notice nor a prior hearing. The only disputes that remain are (1) whether Randall can exercise viewpoint discrimination on such a Facebook page, (2) whether Davison must be provided notice and a hearing prior to such a ban, and (3) whether the Loudoun BOS may be liable in the future for similar such actions.

Both Randall and the Loudoun BOS assert the Facebook page is completely outside of government control and thus Randall can legally exercise viewpoint discrimination. Both assert no due process must be afforded to a banned citizen either pre- or post-deprivation. This case is not about assessing liability for past actions. The infringement merely serves to provide a justiciable controversy upon which a declaratory judgment, and possibly injunctive relief, may be issued.

## C. Prior notice and hearings are required before liberty interests may be infringed

Courts have found that prior notice and a hearing are required before a citizen is deprived of a liberty interest. *Zinernon v Burch*, 494 U.S. 113, 127 (1990) citing

18

*Cleveland Bd. Of Education v Loudermill*, 470 U.S. 532, 542 (1985) Regardless of the length of time, an infringement on a citizen's liberty interest of free speech represents an "irreparable injury". *Elrod v Burns*, 427 U.S. 347, 373 (1976) Only under certain exceptions can failure to provide notice and a hearing for a liberty or property interest be satisfied by post-deprivation due process.[6] *Parratt v Taylor*, 451 U.S. 527 (1981); *Hudson v Palmer*, 468 U.S. 517 (1984) *Parratt* and *Hudson* represent special cases of the *Matthews* test because post-deprivation remedies are the only remedies a public body can be expected to provide. *Zinernon*, 494 U.S. at 128 citing *Mathews v Eldridge*, 424 U.S. 319, 335 (1976). In *Zinernon*, the court found the exceptions did not apply because the act was foreseeable and pre-deprivation procedures could be implemented. *Id.* at 136-137.

The trial court asserts that because Davison "failed to even allege that available post-deprivation remedies were inadequate, Plaintiff failed to carry his burden and his due process claims fail". Dkt. 132, p40 Yet, "any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Freedman v Maryland*, 380 U.S. 57, 58 (1965) (quoting *Bantum Books, Inc. v Sullivan*, 372 U.S. 58, 70 (1963)) Defendants failed to raise

---

[6] In *Parratt*, the Supreme Court noted that property deprivations were sometimes treated differently than other liberty interest violations. 451 U.S. at 539-40. Quoting *Mitchell v W.T. Grant Co.*, the court noted that the "usual rule has been [where] only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate." 416 U.S. 600, 611 (1974) A litigant can be made whole for property deprivation via a tort claim. The same is not true for speech.

19

any of the exceptions to pre-deprivation procedures, such as *Parratt* and *Hudson*, and continue to argue that no post-deprivation remedies whatsoever are required for even extended bans because the Facebook pages are not governmental forums.

Courts have repeatedly found that prior restraint, even when the speech is found to violate criminal ordinances, is unconstitutional. *Vance v Universal Amusement*, 445 U.S. 308, 311-16 (1980); *Southeastern Productions, Ltd. v Conrad*, 420 U.S. 546, 555 (1975)  In *Vance*, the court found that a temporary prior restraint entered by state judge rather than an administrative censor like Randall is still not sufficient to provide constitutional protections against erroneous infringement.[7]  *Id.* at 317.  Davison cited numerous cases in which courts have found the lack of pre-deprivation procedures were unconstitutional.  Dkt 107, p13  The court in *Loudermill* spelled out why such pre-deprivation procedures are beneficial for the official noting that her "discretion will be more informed and we think the risk of error substantially reduced."  470 U.S. at 504, 505 n.8

The trial court raised *sua sponte*, on Defendants' behalf, *Tri Cnty Paving, Inc. v Ashe Cty* in arguing the plaintiff must assert that no post-deprivation remedy was adequate.  281 F.3d 430, 441 (4th Cir 2002)  However, *Tri-Cnty* involved a

---

[7] Just like in the obscenity cases, Randall could have simply deleted Davison's comments individually if they violated the lawful limits of the page and thus were not protected speech.  Randall acknowledged she received notifications any time a Facebook user commented on her page.  While Randall's deletion of comments without providing notice and a hearing might itself be unconstitutional, only Randall's prior restraint of speech is at issue in the current case.

substantive due process claim in which no procedural due process is sufficient to excuse a constitutional infringement and the parties agreed an official committed an "unauthorized" act violating state law. Here, Davison seeks a declaratory judgment that public bodies must provide a simple pre-deprivation process, as the Loudoun BOS has done in its current social media policy governing county-administered social media pages, before infringing upon free speech rights of citizens. Dkt 97-14. As noted in *Zinernon*, pre-deprivation notice and hearings are almost universally required before citizens are deprived of liberty interests. 494 U.S. at 127.

The trial court is seeking to fundamentally alter the jurisprudence in this nation on procedural due process. No party has alleged that Davison's comments were a threat to national security or would lead to violence, valid reasons for prior restraint. *Near v Minnesota*, 283 U.S. U.S. 697, 716-17 (1931) (citing *Schenck v United States*, 249 U.S. 47, 52 (1919) and *Gompers v Buck Stove & Range, Co.*, 221 U.S. 418, 439 (1911)) Simply for making critical or potentially "off topic" comments, the trial court would grant government bodies virtually unlimited discretion to enact prior restraint without any pre-deprivation procedure. *Davison v Plowman*, 2017 U.S. Dist. LEXIS 47157 at 18-20. This same trial court ruled that a prior restraint of speech sustained over a period of months without any opportunity for appeal did not violate settled law. *Id.* at 21 In making such a wide-ranging

21

ruling, the trial court seeks to fundamentally undermine citizens' right of free speech including their right for adversarial hearings prior to having their rights infringed.

## D. The Loudoun BOS can provide adequate pre-deprivation due process

Davison argued that the Loudoun County "Use of Social Media" policy should apply to Supervisor pages. Dkt 107, p2-3,¶6 This policy, promulgated by the county, required any county official or employee making social media comments in their own name to clearly indicate such comments represented only their personal opinion and could not be attributed to the county. Dkt. 107,p2-3; Dkt 107-1,p4(C); Dkt 107-2,p6-7  The policy also established guidelines on the use of social media pages representing the county.  Such official county pages were authorized, elected officials were entitled to serve as spokespersons for the county, and social media creators had the *option* of requesting county employee assistance when establishing those official social media pages. Dkt 107-1,p2(c),p4(A,B) "may request the assistance of the Public Information Office to initially create pages on social networking sites"; Dkt 107-2,p2(A)(2).

A reasonable person can easily conclude from a basic reading of these policies that Supervisors may create Facebook pages representing themselves in an official government capacity since Supervisors are, by policy, spokespersons of the county. In fact, Defendants acknowledge that Supervisors may maintain official Facebook

22

pages subject to First Amendment protections but attempt to distinguish the nature of the pages based solely on who creates the Facebook page.[8]  Dkt 97, p6, #11  The BOS has not denied that county personnel, specifically aides to each of the Supervisors, have administrative rights to the current Supervisor pages including that of Defendant Randall.  It simply is not plausible that *only if* employees of the Public Affairs Office create the Facebook page does the page become "official".[9]

Based primarily on the assertions of the Defendants, the trial court reached the opposite conclusion, that Loudoun County's "Use of Social Media" policy, and thus the actual county social media policy itself, did not apply to Randall's page.[10]

---

[8] The conclusion in Defendants' summary judgment motion that *only if* county staff create a Facebook page for a Supervisor does it become a "sponsored Facebook page" is pure conjecture. Dkt 97, p6, #11  Moreover, the method of accessing the page, whether using personal electronic devices or county-owned devices, is irrelevant since board members have access to Loudoun County email after hours using their own devices.  This Court should note that all Facebook "pages" must be administered by one or more private Facebook "profiles" which are linked to a specific Facebook user's identity.  Thus, administration of a Facebook page must be preceded by logging into Facebook via one's personal profile.  It's not clear it's even lawful to require officials to log into their personal social media accounts on government networks which typically require consent to monitoring, including potentially passwords.

[9] The assertion that Randall's Chair Phyllis J. Randall Facebook page will be exclusively controlled by her after she leaves office is pure conjecture.  Defendant has acknowledged that staff has assisted in creating content on the page.  Since it's a misdemeanor to use government staff for personal purposes, (253.04 of the Loudoun County Ordinances) a future board could determine the County has interests in, or ownership of, any content that was created while Randall was in office.  Dkt. 97, p7, #13.

[10] The trial court's argument that the only way to provide adequate pre-deprivation protections would be to treat all social media accounts of officials or employees as governmental in nature, and thus unduly burden their speech, is not a serious argument. Dkt 132, p35-36. Loudoun County already requires its officials and employees to clearly articulate when their comments on social media do not represent the county.  A Loudoun County employee or official therefore is not authorized to maintain a purely personal social media account shrouded with the symbols and representations of a county official.  When any official or employee consciously shrouds a social media account with the symbols of the county, such an account would be considered governmental in nature, subject to the county social media policy and, as of today, subject to pre-deprivation protections.  Defendants could have argued that because of its nature, the Chair Phyllis Randall page represented an unauthorized official social media account that violated its "Use of Social Media" policy.  Defendants could then argue the BOS would require Randall to cease representing herself in an official capacity on a personal page or come into compliance with the county's official social media policy regarding citizen comments.  However, to do so, Defendants would have to acknowledge that pages such as Randall's are governmental in nature and thus Randall would lose in her individual capacity on Count V.

Dkt 116, p12-15. Had those policies applied, the trial court could have noted that the updated Loudoun County social media policy includes pre-deprivation procedures, ruled appropriate pre-deprivation procedures now exist, and a declaratory judgment on Davison's official capacity due process claim would not be warranted. A ban against a citizen on Randall's page would require a pre-deprivation notice and hearing. Randall's failure to follow such procedures would qualify as an unauthorized act. However, having ruled that the Loudoun County social media policy does not apply to Supervisor social media pages, the trial court cannot conclude that appropriate pre-deprivation procedures exist for foreseeable infringements going forward.

### E. Viewpoint discrimination by Loudoun Supervisors on their individual Facebook pages was foreseeable

The trial court asserts that Randall's use of her "Chair Phyllis J. Randall" Facebook page in a manner that represented a governmental forum could not have been anticipated. Memo of Decision, Dkt 132, p34. There is absolutely no basis for such an assertion. The county had established a social media policy for pages controlled by a county department, a *de facto* admission that erroneous infringements on free speech were possible, and thus foreseeable, on social media. Defendants imply this same policy would apply to "sponsored" Supervisor pages created by the Public Affairs Office. Randall set up her page immediately prior to

24

assuming office as Chair of the Loudoun BOS. Tr. 109. Defendants did not dispute that other Supervisors had Facebook pages that likewise described themselves in an official capacity. Dkt 70-4, 70-8, 107-9. When multiple members of the BOS administer Facebook pages similar to Defendant Randall, the BOS cannot simultaneously claim such pages are not foreseeable. More importantly, it is undeniable that Defendants can *now foresee* similar use of social media, and free speech infringement, by Supervisors.

Moreover, in overruling Davison's Objection to the Magistrate Judge's order and restricting the issues at trial to only Defendant Randall's Facebook page, the trial court denied Davison the ability to compel Defendants to testify on their use of individual Facebook pages representing themselves as Supervisors. Not only is the trial court's conclusion about foreseeable infringement on social media not true, but combined with its refusal to allow Davison to conduct discovery on the foreseeability of such infringements, it indicates bad faith. A trial court cannot restrict issues under consideration at trial and then make a conclusion that could be proven false had the parties been allowed to present evidence on whether such infringements were foreseeable.

### F. Banning a user on social media represents an "irreparable injury" and a significant burden on speech

The trial court also asserts that Randall's ban represented an

"inconsequential" burden on speech and thus concluded pre-deprivation procedures were not warranted. Dkt 132, p36. This assertion is demonstrably false. The trial court even noted the Supreme Court's observations in *Packingham v North Carolina*, that much of today's discourse takes place on social media. 137 S.Ct. 1730, 1735-36 (2017); Dkt 132, p30. A large portion of user comments and views generated in the hours immediately succeeding a page owner's post. When an administrator bans a user for even a few hours, such a ban significantly impairs a citizen's right to speech. For elected officials with large followings who conduct policy discussions via their social media accounts, not unlike Defendant Randall or even President Trump, there is simply no equivalent alternative channel where a citizen can be heard by a similar audience. To claim that Davison had equivalent alternate channels of communication is tantamount to suggesting public bodies can legally ban citizens from speaking at public meetings because those citizens can speak to passers-by on the sidewalk outside. Courts have rejected such conclusions. *Cyr v ARSU*, 60 F. Supp. 3d 536, 548-50 (2014)

Furthermore, the user is not notified by many social media sites, including Facebook, when he has been banned nor when the ban has been lifted. The user is not even aware he should appeal to the page administrator. A banned user could go months without realizing he was banned. All of his prior comments on the social

media page would be automatically deleted; thus, no other users could see his comments on a governmental forum. Even if This Court rules that a pre-deprivation hearing is not required prior to an outright ban, a pre-deprivation notice must be required. Such notice, especially electronically on the social media site itself, requires no more effort than banning the user altogether. Pre-deprivation protections are even more important given that his case involves prior restraint of speech, a complete ban by Randall, which constitutes a much greater infringement than mere deletion.

Davison concedes that officials have an interest in moderating discussion on their Facebook pages. Dkt 132, p38. However, the trial court misunderstands the nature of social media sites and the controls that are available to both administrators and users. As an initial matter, government officials are not required to allow public comment on their pages. Just as in many town halls, officials can solicit questions or comments from citizens and choose which ones they quote or answer on their page. This is exactly what happens on Defendants' newsletters and is allowed as government speech. *Pleasant Grove City v Summum*, 555 U.S. 460, 467-69 (2008)

Citizens may also block other users so that the former do not even see the latter's comments. Davison has never asserted that citizens should not be allowed to hide speech the individual citizen does not wish to see. Social media allows

individual users to effectively moderate what they see. However, neither government officials nor citizens (as argued in Count IX described in Section III below) should be able to suppress the speech of others unless it runs afoul of First Amendment protections. This is particularly true for prior restraint in which the censor cannot possibly foresee what future speech will entail.

Government officials simply cannot open a government forum for unlimited public comment, discriminate based on viewpoint by implementing prior restraint, and provide no due process whatsoever to prevent erroneous deprivation.

### G. There is no evidence that Loudoun Supervisors would not comply with due process protections on their individual Facebook pages

As noted in Section I (D) above, public bodies are appropriately joined as parties on claims for declaratory judgments when they can influence the behavior of closely related public bodies or officials. Defendants do not argue that Loudoun Supervisors would fail to comply with pre-deprivation due process procedures if the BOS extended the county's social media policy to cover the Supervisor Facebook pages. Rather, Defendants argue Supervisors need not observe free speech or due process protections because the pages are not governmental forums. A declaratory judgement is needed to ensure Supervisors comply in the future.

The trial court further opines that "[i]t is simply not clear how predeprivation procedures might meaningfully reduce the risk of erroneous deprivation." Dkt. 132,

28

p37. This assertion is belied by Randall's own actions. Randall acknowledges that she thought better of it and reversed the ban within one day. Had Randall been required to give notice to Davison and a chance to be heard, there is a significant chance, one might say almost virtual, that Randall would never have effected the ban.[11] The trial court is effectively arguing that officials may repeatedly ban citizens for erroneous reasons and cure such infringements by providing post-deprivation remedies. Under such a system, government officials could ban users for limited periods of time during heightened political discussions without running afoul of the law. Such a system puts the burden on the speakers to censor their own speech else they will be banned from the virtual town square.

Defendants understand exactly how to craft appropriate pre-deprivation procedures as evidenced by the current Loudoun County social media policy. Defendants simply don't want to subject their own Supervisor Facebook pages to that policy. Only a declaratory judgment against Defendants in both an individual and official capacity will protect the due process rights of Davison and others on such pages.

---

[11] Pre-deprivation procedures for speech censorship arguably provide as much protection for the censoring official as they do for the restricted citizen. Just like Randall in the present action, officials can be liable for unconstitutionally censoring speech even if they do not violate procedural due process. Such procedures force officials to consider whether their actions are legal, and in the case of the current Loudoun County social media policy, require independent officials to make a final ruling. It thus reduces unconstitutional infringements and the litigation that ensues.

29

**III.   Whether Davison's motion to amend to add Count IX regarding First Amendment claims against the Loudoun BOS should have been denied.**

### A. Standard of Review

Denial of a motion to amend is reviewed based on an abuse of discretion. *Balas v Huntington Ingalls Indus.*, 711 F.3d 401, 409 (4th Cir 2013) citing *HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001)  However, courts should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)  "'[L]eave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Id. at 409* citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986))

### B. Davison stated a plausible First Amendment claim in his motions to amend

A denial of a motion to amend is reviewed *de novo* with respect to the futility of the claims.  *US Airline Pilots Ass'n v AWAPPA*, 615 F.3d 312, 317, 320 (4th Cir 2010) citing *Anderson v Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir 2007)

In denying plaintiff's motion to amend to add Count IX while hearing Davison's Objection to the Magistrate Judge's order, the trial court ruled Count IX

was futile.[12]  Dkt 116, p26.

Plaintiff sought to add a claim against the Loudoun BOS for indifference to the violation of citizens' free speech rights on its official county Facebook pages. Since such Facebook pages had been opened for public comment, they qualified as limited public forums. *Davison v Plowman*, 2017 U.S. Dist. LEXIS 4348 at 8-10. The facts surrounding the claim were not in dispute.  Various Facebook users had blocked Davison using their personal Facebook profile.  This meant Davison could not view the personal Facebook timelines of those users nor could he view their comments on public pages such as the "Loudoun County Government" Facebook page.   More  importantly,  Facebook  allows  users  to  conduct  "threaded" conversations.  All replies to a top-level comment are grouped into a "thread".  If the author of the top-level comment blocks another user (E.g. Davison), the blocked user cannot see either the top-level comment or any of the replies within the thread. Users who reply to the thread are not even aware a blocked user cannot see their comments.  The replies are hidden even if a reply is created by a government official using a public page account.[13]  Dkt. 68, p4-5.

---

[12] As described in the summary of the case, Davison refers to the third-party speech infringement claim as a potential "Count IX" since it was never authorized to be added to an amended complaint.

[13] Davison provided an example via exhibit 32 of his third motion to amend. Dkt 70-8  In the exhibit, Loudoun Supervisor Letourneau replied to Davison's comment using his public Facebook page "Supervisor Matt Letourneau". A running conversation ensued.  If Davison chose to block any other Facebook user, the blocked user could not view either Davison's initial comment nor any of the replies underneath by either party.

This claim was initially styled as Count VII when it was filed via Davison's first motion to amend on September 20, 2016, and his second motion to amend on October 17, 2016. After discovery was completed, Davison again sought to add the claim on March 6, 2017. Dkt. 67,68,70,70-1 through 70-9. For different reasons, the magistrate judge denied each of Davison's motions to add the claim related to third parties blocking citizens' ability to comment on Loudoun's Facebook pages. In denying the first two motions without prejudice, the magistrate indicated public bodies were not required to protect citizens' speech rights from third party actors. The magistrate judge denied Davison's third motion to amend the claim with prejudice. During oral arguments on Davison's third motion to amend, the magistrate judge acknowledged public bodies had a duty to prevent third parties from "shouting down" speakers participating in public comment periods at open government meetings. However, the magistrate judge ruled the claim as plead was futile as a matter of law suggesting the issue was more related to a contractual issue between Facebook and the Loudoun BOS.

The issue revolves solely around whether a public body has a duty to protect the First Amendment rights of its constituents on its social media pages, when operated as a limited public forum, after the public body becomes aware of the

infringement.[14]  In his third motion to add the claim, Davison referenced a case in Panama City Beach, Florida, where the city granted permits for outside groups to use it public parks for gatherings. *McMahon v City of Panama City Beach*, 180 F. Supp. 3d 1076, 1113 (2016) ("cannot allow the City to do indirectly what it could never do itself; namely, allow unfettered discretion to suppress speech in the public forum. This action runs counter to the very purpose of the First Amendment and is precisely the sort of mischief that the Free Speech Clause was meant to address.")

In *McMahon*, that trial court ruled that such parks were still considered public forums even during the gatherings.  As such, it was unlawful for the private gathering organizers to deny citizens the right to speak or hand out leaflets during the event. While the city may not have been liable for the private organizer's initial violation of citizens' First Amendment rights, the city became liable when it failed to change, and even defended, its policy allowing private organizers to remove citizens from such events.  *Id.* at 1093.  It is irrelevant that the city did not conspire to actively block certain citizens from handing out leaflets.  The fact that the city continued to implement a policy that showed indifference to unconstitutional free speech infringements incurred liability on behalf of the city.

---

[14] Davison's second motion to amend was filed subsequent to putting Loudoun BOS on notice of the alleged constitutional violations.  The Loudoun BOS failed to respond to Davison's email except via legal arguments proffered in these proceedings

The same is true here. While the Loudoun BOS may not be initially liable for Facebook users who block other citizens from participating on the county Facebook pages, continued indifference to such blocks results in liability.[15]

The most analogous example to the current controversy are the requirements under Section 508 of the Rehabilitation Act of 1973. Statute 29 U.S.C 794(d) requires federal websites to provide information technology (IT) to citizens with physical impairments via alternative communication methods. This federal law, just like the Constitution, does not place responsibility on private vendors to build software that complies with the alternate accessibility requirements. Rather, it requires government agencies who implement such software to ensure it complies with the Act's provisions.[16] Government agencies are forbidden from knowingly utilizing software that infringes on the statutory rights conferred by the act. Citizens or employees may bring cases to protect their rights against the public agency, not the software vendor. The public agency may then either contractually force the software vendor to comply or procure software from another vendor that is in compliance. The Loudoun BOS is in the same situation here with regard to its social media pages on Facebook.

To allow the Loudoun BOS to continue to operate its Facebook pages even

---

[15] Davison informed the BOS of the infringements via his motion to amend on October 13, 2016. Dkt 25-7.
[16] See questions 13-16 of the United States Access Board's FAQs: https://goo.gl/3aVoDw

after it becomes aware of viewpoint discrimination on its limited public forum opens the door to the parade of horribles.  Citizens of one ethnic group could collude to ban all members of another ethnic group from viewing their comments on Facebook. Subsequently, entire discussions held by the former ethnic group on their local's government's social media pages would be hidden from the latter ethnic group. Elected officials could even participate in those hidden discussions without any liability.  This is analogous to allowing certain groups and their elected officials to retire to private rooms for the discussion of public business that are closed off to disaffected groups.

Additionally, government bodies could contract with groups like the KKK or Antifa to host their social media pages.  The social media hosts could systematically ban any user who doesn't agree with their agenda from the social media pages of the government entity.   The government body could hide behind the policies of a "private firm" to enact what it couldn't legally implement on its own.   The government entity could therefore engage in viewpoint discrimination, simply by choosing who should host their social media pages, without incurring liability for the discrimination.

Just as in *McMahon*, such a legal argument cannot stand.  When made aware of viewpoint discrimination, government actors must rectify any continued

discrimination or else they become liable. Here, the Loudoun BOS has numerous options. It can (i) end all public comments, (ii) require Facebook to prevent third-party users from blocking other citizens on the Loudoun social media pages, or (iii) seek an alternate platform for its social media presence over which it has greater control. It cannot show continued indifference.

## C. Davison's multiple motions to amend were timely and did not prejudice Defendants.

There was no prejudice to the Defendants in allowing Davison to add the claim. The same counsel represented Randall in her personal capacity, Randall in her official capacity and the Loudoun BOS. There can be no dispute that all the defendants were aware of and knowledgeable on this claim since it was first filed in September 2016. The Loudoun BOS was still a party to the lawsuit when the trial court denied the objections to the magistrate judge's order on May 10, 2017. Davison maintained his claim against Randall in her official capacity throughout. Thus, the Loudoun BOS, in privity with Randall in her official capacity, was always a party to the suit.

No additional discovery was needed. The defendants did not deny the clear evidence provided by Davison showing that he was blocked from participating in some of the comment threads on their official county social media pages. In fact, a ruling on this claim would be appropriate via summary judgment since there are no

36

relevant facts in dispute. The only issue is whether government bodies must ensure their social media sites, operated as limited public forums, comply with First Amendment protections.

If Loudoun BOS is unable to protect such rights on Facebook's platform, there are plenty of other platforms that offer the Loudoun BOS appropriate control to ensure such rights are protected. Furthermore, it is extremely likely that if this court rules that such blocks by third parties on government social media pages are unconstitutional, Facebook will modify its software to ensure First Amendment rights are protected on its platform. In this very case, Facebook acknowledged it changed its algorithms to prevent third parties from completely suppressing all the comments from a targeted user on its platform. Dkt. 97-32. A similar modification would likely occur if the trial court granted a declaratory judgment on the claim in Davison's favor.

## CONCLUSION

For the foregoing reasons, Appellant Davison respectfully requests that This Court (1) reverse the trial court's dismissal and issue a declaratory judgment on the Fourteenth Amendment procedural due process Counts VI and VIII against Defendant Randall in her individual and official capacities; (2) extend the declaratory judgment on the First Amendment free speech Counts V and VII to cover Defendant Randall in her official capacity, and thus the Loudoun BOS, and

37

(3) reverse the trial court's denial of Davison's motion to add Davison's proposed

First Amendment free speech Count IX via amendment.  Davison further requests

This Court remand the case for further proceedings.

## REQUEST FOR ORAL ARGUMENT

The Appellant requests oral argument.

Respectfully Submitted,


_____/s/_____
Brian C. Davison

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B)(i) because:

   [ X ] this brief contains [9347] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), or

   [   ] this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [Microsoft Word 2016] in [14pt Times New Roman]; Or

   [ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Date: _____06 November 2017_____     _____/s/_____
                                                      Brian C Davison

39

## CERTIFICATE OF FILING AND SERVICE

Pursuant to Fed. R. App. P. 25(c), I certify that the foregoing was electronically filed with the Clerk of Court on November 3, 2017 using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

Date: _____6 November 2017_____        _____/s/_____

                                                    Brian C Davison